

FILED

JUL 29 2003

SAMUEL L. KAY, CLERK
U.S. District & Bankruptcy Cour
Southern District of West Virg...

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Beckley

UNITED STATES FIDELITY
& GUARANTY COMPANY,

              Plaintiff,

v.                                                    CIVIL ACTION NO.: 5:03-0702

CHARLIE SANDERS,
LORETTA BAILEY, Administratrix of
the ESTATE OF SHAWN KEITH BAILEY,
and DARREN C. LUSK D/B/A BIG CHIG, INC.,

              Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW the Plaintiff, United States Fidelity & Guaranty Company,
(hereinafter "USF&G"), by and through its attorneys, Ancil G. Ramey, Esquire, Michelle
E. Piziak, Esquire, and the law firm of Steptoe & Johnson, PLLC, and for its Complaint
for Declaratory relief, states as follows:

1.      This action is instituted pursuant to the provisions of W.Va. Code §§ 55-
13-1, *et seq.*, known as the Uniform Declaratory Judgments Act and 28 U.S.C. § 2201
regarding declaratory judgments..

2.      USF&G is a foreign corporation with its principal place of business located
outside of the State of West Virginia.

3.      Charlie Sanders is a citizen and resident of the State of West Virginia.

4.      Loretta Bailey is the Administratrix of the Estate of Shawn Keith Bailey
and is a citizen and resident of the State of West Virginia.

5.      Darren C. Lusk d/b/a Big Chig, Inc. is a corporation with its principal
place of business located within the State of West Virginia.

6.      Upon information and belief, the amount in controversy exceeds Seventy-
Five Thousand Dollars ($75,000.00) as the insurance policy at issue herein has a limit of
liability of One Million Dollars ($1,000,000.00).

7.     The United States District Court for the Southern District of West Virginia has diversity jurisdiction by reason of 28 U.S.C. § 1332(a)(1), inasmuch as the plaintiff is a resident of another State and the defendants are residents of the State of West Virginia.

8.     Darren C. Lusk d/b/a Big Chig, Inc. purchased a policy of insurance with USF&G, policy number PD85P00168, with a policy period of November 30, 2001, through November 30, 2002. [Policy, attached hereto as Exhibit A].

9.     A civil action was instituted by Defendants Charlie Sanders and Loretta Bailey, Administratrix of the Estate of Shawn Keith Bailey, against Big Chig, Inc. d/b/a Big Chig Trucking Company [hereinafter "Big Chig"] in the Circuit Court of Wyoming County, West Virginia, styled *Sanders v. Bluestone Coal Corporation, et al.*, Civil Action No. 03-C-100 [hereinafter the "Sanders Complaint"]. [Sanders Complaint, attached hereto as Exhibit B].

10.     The Sanders Complaint alleges that Bluestone Coal Corporation [hereinafter "Bluestone"] had a coal haulage contract with Big Chig which, in turn, entered into a coal haulage contract with KAT Trucking Company [hereinafter "KAT"] and its employee, Ronnie Joe Lusk. [Exhibit B at ¶¶ 3, 13].

11.     The Sanders Complaint alleges that on or about April 15, 2002, Big Chig was a joint venturer with KAT when KAT's employee lost control of a coal truck owned by KAT that had been overloaded by employees of Bluestone. [Exhibit B at ¶ 4].

12.     According to the Sanders Complaint, the coal truck tipped over onto a truck being driven by Shawn Keith Bailey and occupied by Charlie Sanders. [Exhibit B at ¶ 4].

13.     The Sanders Complaint contends that Shawn Keith Bailey subsequently died as a result of his injuries and Charlie Sanders is paraplegic. [Exhibit B at ¶¶ 23, 24].

14.     The Sanders Complaint generally alleges that as a joint venturer, Big Chig is liable for the negligent, reckless and willful actions of Bluestone and KAT because they were all engaged in the same enterprise. [Exhibit B at ¶¶ 29, 30].

15.     Darren C. Lusk d/b/a Big Chig, Inc. has sought the defense of, and indemnification for, the Sanders Complaint under the policy of insurance issued by USF&G.

16.     The insuring agreement of the USF&G policy states, in relevant part:

2

> We will pay all sums an "insured" legally must pay as
> damages because of "bodily injury" or "property damage"
> to which this insurance applies, caused by an "accident" and
> resulting from the ownership, maintenance of use of a
> covered "auto" .

[Exhibit A at 2 of 10].

17. The policy states that "we have no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' . . . to which this insurance does not apply." [Exhibit A at 2].

18. As a matter of law, Darren C. Lusk d/b/a Big Chig, Inc. was not engaged in a joint venture with Bluestone Coal Corporation or KAT Trucking Company.

19. As a matter of law, Darren C. Lusk d/b/a Big Chig, Inc. is not legally obligated to pay damages as a result of the allegations made in the Sanders Complaint; therefore, coverage is not triggered under the USF&G insuring agreement.

20. The subject policy provides that "Covered Autos" for liability coverage includes those autos in categories "7, 8, 9." [Exhibit A at Declarations].

21. Category "9" provides for non-owned autos as follows:

> Only those "autos" you do not own, lease, hire, rent or
> borrow that are used in connection with your business. This
> includes "autos" owned by your "employees", partners (if
> you are a partnership), members (if you are a limited
> liability company), or members of their households but only
> while used in your business or your personal affairs.

[Exhibit A at 1].

22. The purpose of a "non-owned automobile clause" is to provide coverage to the insured while engaged in infrequent or casual use of an automobile other than one described in the policy.

23. The KAT truck is not a "Nonowned Auto" covered under the policy as the purpose of a "non-owned automobile clause" is to provide coverage to Darren C. Lusk d/b/a Big Chig, Inc. while engaged in infrequent or casual use of an automobile other than one described in the policy.

3

24.    The KAT truck is not a "Nonowned Auto" covered under the policy as the driver was acting within the course and scope of his employment with KAT, not with Darren C. Lusk d/b/a Big Chig, Inc.

25.    The KAT truck is not a "Nonowned Auto" covered under the policy as the Darren C. Lusk d/b/a Big Chig, Inc. did not exert any control over the KAT truck.

26.    USF&G has no duty to defend against, or indemnify for, the allegations made in the Sanders Complaint as there is no coverage under the subject policy for the KAT truck.

## COUNT I -- DECLARATORY RELIEF

27.    USF&G reincorporates by reference the statements and allegations contained in paragraphs 1 through 26 of its Complaint for Declaratory Relief.

28.    USF&G seeks a declaratory judgment against the Defendants to the effect that USF&G is not required to provide coverage under the subject policy for the claims of Charlie Sanders and Loretta Bailey as Administratrix of the Estate of Shawn Keith Bailey, and does not have the duty to defend and/or indemnify Darren C. Lusk d/b/a Big Chig, Inc. against the Sanders Complaint, under the subject policy of insurance.

## COUNT II -- ATTORNEY FEES and COSTS

29.    USF&G reasserts the statements and allegations contained in paragraphs 1 through 28 of its Complaint for Declaratory Relief.

30.    W. Va. Code § 55-13-10 provides, "in any proceeding under this article, the Court may make such award of costs as may seem equitable and just."

31.    Where Defendant Darren C. Lusk d/b/a Big Chig, Inc. asserted a claim for coverage clearly precluded by the subject policy, USF&G submits that a discretionary award of attorney fees and costs in defending and prosecuting a declaratory judgment action is appropriate.

WHEREFORE, USF&G respectfully requests the following relief:

(1)    A declaration that there is no coverage for the defense of and indemnification for the claims of Charlie Sanders and Loretta Bailey, Administratrix of the Estate of Shawn Keith Bailey, as set forth in the

4

Sanders Complaint, under the policy of insurance issued to Darren C. Lusk
d/b/a Big Chig, Inc.;

(2)     That USF&G be awarded its attorney's fees and costs in prosecuting this
action; and

(3)     That USF&G be awarded any and all other further relief that this Court
deems just and proper.

**UNITED STATES FIDELITY
& GUARANTY COMPANY**

**By Counsel**

Ancil G. Ramey, Esq.
WV State Bar ID No. 3013
Michelle E. Piziak, Esq.
WV State Bar ID No. 7494
P.O. Box 1588
Charleston, WV 25326-1588
Telephone:  (304) 353-8112
Facsimile:  (304) 353-8180

STEPTOE & JOHNSON, PLLC
Of Counsel

5

COMMERCIAL AUTO
CA 00 01 07 97

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|--------|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |



Copyright, Insurance Services Office, Inc., 1996

### B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1, 2, 3, 4, 5** or **6** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

    a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

    b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

### C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

    a. Breakdown;

    b. Repair;

    c. Servicing;

    d. "Loss"; or

    e. Destruction.

## SECTION II – LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

    The following are "insureds":

    a. You for any covered "auto".

    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

        (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

        (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

        (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

        (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

        (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

    c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. **Coverage Extensions**

    a. **Supplementary Payments**

        In addition to the Limit of Insurance, we will pay for the "insured":

        (1) All expenses we incur.

CA 198 (07-
CA 00 01 07

Copyright, Insurance Services Office, Inc., 1996

(2) Up to $2,000 for cosi of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earning up to $250 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract agreement.

But this exclusion does not apply to liability f damages:

a. Assumed in a contract or agreement that an "insured contract" provided the "bodi injury" or "property damage" occur subsequent to the execution of the contra or agreement; or

b. That the "insured" would have in th absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or th "insured's" insurer may be held liable an workers' compensation, disability benefits unemployment compensation law or any simila law.

**4. Employee Indemnification And Employer' Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to th conduct of the "insured's" business; or

b. The spouse, child, parent, brother or siste of that "employee" as a consequence Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable a an employer or in any other capacit and

(2) To any obligation to share damages wit or repay someone else who must pa damages because of the injury.

But this exclusion does not apply to "bodi injury" to domestic "employees" not entitled t workers' compensation benefits or to liabilit assumed by the "insured" under an "insure contract". For the purposes of the Coverag Form, a domestic "employee" is a perso engaged in household or domestic wor performed principally in connection with residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of th "insured" arising out of and in the course of th fellow "employee's" employment or whil performing duties related to the conduct of you business.

6. **Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

   a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

   b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **Operations**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

10. **Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed.

   (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. **Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled or handled for movement into, onto or from, the covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon the covered "auto";

   b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

   (1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   (2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   (1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

Copyright, Insurance Services Office, Inc., 1996

CA 196 (07-9
CA 00 01 07

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

## 12. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

## 13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

## 2. Towing

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

## 3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

## 4. Coverage Extension

We will pay up to $15 per day to a maximum of $450 for temporary transportation expenses incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

Copyright, Insurance Services Office, Inc., 1996

**b. War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph c. above.

Exclusions 4.c. and 4.d. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**C. Limit Of Insurance**

The most we will pay for "loss" in any one "accident" is the lesser of:

1. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**D. Deductible**

For each covered "auto", our obligation to pay for repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

Copyright, Insurance Services Office, Inc., 1996

CA 196 (07-
CA 00 01 07

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

### 2. Concealment, Misrepresentation Or Fraud

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

### 3. Liberalization

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

### 5. Other Insurance

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own.

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

### 6. Premium Audit

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico; and

d. Canada.

We also cover "loss" to, or "accident" involving, a covered "auto" while being transported between any of these places.

### 8. Two Or More Coverage Forms Or Policies Issued By Us

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

Copyright, Insurance Services Office, Inc., 1996

CA 196 (07-
CA 00 01 07

## SECTION V – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand or order; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

F. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

G. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

Copyright, Insurance Services Office, Inc., 1996

An "insured contract" does not include that part of any contract or agreement:

   a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

   b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

   c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

H. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

I. "Loss" means direct and accidental loss or damage.

J. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   2. Vehicles maintained for use solely on or next to premises you own or rent;

   3. Vehicles that travel on crawler treads;

   4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     a. Power cranes, shovels, loaders, diggers or drills; or

     b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

   5. Vehicles not described in Paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     b. Cherry pickers and similar devices used to raise or lower workers.

   6. Vehicles not described in Paragraphs 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

     a. Equipment designed primarily for:

       (1) Snow removal;

       (2) Road maintenance, but not construction or resurfacing; or

       (3) Street cleaning;

     b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

K. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

L. "Property damage" means damage to or loss of use of tangible property.

M. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense",

to which this insurance applies, are alleged.

   "Suit" includes:

   a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

N. "Temporary worker" means a person who is furnished to you for a finite time period to support or supplement your workforce in special work situations such as "employee" absences, temporary skill shortages and seasonal workloads.

O. "Trailer" includes semitrailer.

Copyright, Insurance Services Office, Inc., 1996

CA 196 (07-97
CA 00 01 07 9



# COMMERCIAL INSURANCE POLICY - COMMON POLICY DECLARATIONS

Policy No. D085P00168                                          Renewal of: DRE 16693-00

| NAMED INSURED AND MAILING ADDRESS: | Branch Office: | Discovery Managers, Ltd. |
|---|---|---|

Darren C. Lusk, dba: Big Chig, Inc.,
Big Chig Trucking, J & H Trucking, Inc.

P.O. Box 1869
Oceana, WV 24870

**Branch Office:** Discovery Managers, Ltd.

**Agent:** The Insurance Professionals, Inc.

**Address:** 8140 NORTH HAYDEN ROAD, BLDG. H
SCOTTSDALE, AZ 85258-2466

**Agent's Code:**                              **Subproducer No. : JIMWVB**
**Client No. :**        6120a

2.  **POLICY PERIOD:**
    From     **11/30/01**    To        **11/30/02**
    12:01 A.M. standard time at your mailing ad-
    dress shown above.

    Countersigned By:

3.  **BUSINESS DESCRIPTION:**

    .TRUCKERS

4.  In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the
    insurance as stated in this policy.  This policy consists of the following Coverage Part(s) for which a premium is indicated.
    This premium may be subject to adjustment.  The Policy Writing Minimum Premium is .

| Coverage Part(s) | | Premium |
|---|---|---|
| Business Auto Coverage Part | $ | 118,653.00 |
| Mobile Property Coverage Part | $ | 750.00 |
| WV Surcharge | $ | 1,186.53 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| **Total Policy Premium** | $ | 120,589.53 |
| Premium is payable:    At inception: | $ | 120,589.53 |

5.  FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:  (See specific form or endorsement for
    applicability to each coverage part.):

    See "List of Forms and Endorsements Forming a Part of This Policy".

**Insurer: United States Fidelity and Guaranty Company**, Baltimore, Maryland 21202

Other

CL/IL 108 06 94M
11/10/95

BUSINESS AUTO COVER~~   PART - DECLARATIONS (PAR~~

USF+G
INSURANCE

Policy No.  D085P00168

ITEM ONE.  FORM OF BUSINESS:
☐ Individual  ☐ Partnership   ☐ Joint Venture  ☐ Limited Liability Company
☒ Corporation ☐ Other

ITEM TWO.  SCHEDULE OF COVERAGES AND COVERED AUTOS:
This Coverage Part provides only those coverages where a charge is shown in the premium column below
Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as
covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED
AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| Liability | 7, 8, 9 | $ 1,000,000 | $     49,727. |
| Personal Injury Protection (P.I.P.) (or equivalent No-Fault coverage) | | Separately Stated In Each P.I.P. Endorsement Minus $            deductible | $ |
| Added Personal Injury Protection (or equivalent Added No-Fault coverage) | | Separately Stated In Each Added P.I.P. Endorsement. | $ |
| Property Protection Insurance (Michigan Only) | | Separately Stated In Each P.P.I. Endorsement Minus $            deductible For Each "Accident" | $ |
| "Auto" Medical Payments | 7 | $ 5,000 | $      1,660. |
| Uninsured Motorists | 7 | $ 100,000 | $        902. |
| Underinsured Motorists (when not included in Uninsured Motorists coverage) | | $ | $ |
| Physical Damage Comprehensive Coverage | 7 | Actual Cash Value Or Cost Of Repair, Whichever is Less Minus $ VAR Deductible For Each Covered "Auto", But No Deductible Applies To "Loss" Caused By Fire Or Light-ning. See ITEM FOUR for hired or borrowed "autos." | $     11,602. |
| Physical Damage Specified Causes Of Loss Coverage | | Actual Cash Value Or Cost Of Repair, Whichever is Less Minus $25. Deductible For Each Covered "Auto", For "Loss" Caused By Mischief or Vandalism. See ITEM FOUR for hired or borrowed "autos." | $ |
| Physical Damage Collision Coverage | 7 | Actual Cash Value Or Cost Of Repair, Whichever is Less Minus $ VAR Deductible For Each Covered "Auto". See ITEM FOUR for hired or borrowed "autos." | $     54,758. |
| Physical Damage Towing and Labor (not available in California) | | $50 For Each Disablement Of A Private Passenger "Auto." | $ |
| Premium For Endorsements: | | | $          4 |
| *TOTAL ESTIMATED PREMIUM FOR THIS COVERAGE PART: | | | $    118,653. |

*This policy may be subject to final audit.

FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

See "Listing of Forms and Endorsements that Form a Part of This Policy."

ITEM THREE.  SCHEDULE OF COVERED AUTOS YOU OWN: SEE VEHICLE SCHEDULE.

CL/CA 00 23 10 97M (Part 1)                                    (ISO CA 00 02 07 9

)) )



# COMMERCIAL INSURANCE POLICY - COMMON POLICY DECLARATIONS

Policy No. D085P00168                     Renewal of: DRE 16693-00

**NAMED INSURED AND MAILING ADDRESS:**

Darren C. Lusk, dba: Big Chig, Inc.,
Big Chig Trucking, J & H Trucking, Inc.

P.O. Box 1869
Oceana, WV 24870

| | |
|---|---|
| **Branch Office:** | Discovery Managers, Ltd. |
| **Agent:** | The Insurance Professionals, Inc. |
| **Address:** | 8140 NORTH HAYDEN ROAD, BLDG. H<br>SCOTTSDALE, AZ 85258-2466 |
| **Agent's Code:** | **Subproducer No. : JIMWVB** |
| **Client No. :** | 6120a |

2. **POLICY PERIOD:**
From     **11/30/01**     To     **11/30/02**
12:01 A.M. standard time at your mailing ad-
dress shown above.

Countersigned By: _____

3. **BUSINESS DESCRIPTION:**

TRUCKERS

4. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following Coverage Part(s) for which a premium is indicated. This premium may be subject to adjustment. The Policy Writing Minimum Premium is .

| Coverage Part(s) | Premium |
|---|---|
| Business Auto Coverage Part | $ 118,653.00 |
| Mobile Property Coverage Part | $ 750.00 |
| WV Surcharge | $ 1,186.53 |
| | $ |
| | $ |
| | $ |
| | $ |
| **Total Policy Premium** | $ 120,589.53 |

Premium is payable:     At inception:     $ 120,589.53

5. FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART: (See specific form or endorsement for
applicability to each coverage part.):

See "List of Forms and Endorsements Forming a Part of This Policy".

**Insurer: United States Fidelity and Guaranty Company, Baltimore, Maryland 21202**

Other

CL/IL 108 06 94M
11/10/95

Issued:12/10/01 VK : R8

## BUSINESS AUTO COVERAGE PART - DECLARATIONS (PART 2)
Policy No. D085P00168


U S F+G
INSURANCE

ITEM FOUR. SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGES AND PREMIUMS:
LIABILITY COVERAGE - RATING BASIS, COST OF HIRE

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE FOR EACH $100 COST OF HIRE | FACTOR (If Liability Coverage is Primary) | PREMIUM |
|---|---|---|---|---|
| WV | IF ANY | VAR | | 56.00 |

$100,000    TOTAL PREMIUM  $56.00    ENDT #1

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family (members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

### PHYSICAL DAMAGE COVERAGE

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|---|---|
| Comprehensive | Actual Cash Value, Cost of Repairs or $ Whichever is Less, Minus $ Deductible For Each Covered "Auto" But No Deductible Applies to "Loss" Caused By Fire Or Lightning | | | $ |
| Specified Causes of Loss | Actual Cash Value, Cost Of Repairs Or $ Whichever Is Less, Minus $25 Deductible For Each Covered "Auto" For "Loss" Caused By Mischief Or Vandalism. | | | $ |
| Collision | Actual Cash Value, Cost Of Repairs Or $ Whichever Is Less, Minus $Deductible For Each Covered "Auto" | | | $ |

TOTAL PREMIUM  $0.00

ITEM FIVE. SCHEDULE FOR NON-OWNERSHIP LIABILITY:

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other Than A Social Service Agency | Number of Employees | 0-25 | $61.00 |
| | Number of Partners | | $ |
| Social Service Agency | Number of Employees | | $ |
| | Number of Partners | | $ |

TOTAL PREMIUM $61.00

ITEM SIX. SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS-LIABILITY COVERAGE-PUBLIC AUTO OR LEASING RENTAL CONCERNS:

| PREMIUM BASIS (See Reverse Side for Explanation) Estimated Yearly ☐ Gross Receipts ☐ Mileage | RATES ☐ Per #100 of Gross Receipts ☐ Per Mile | | PREMIUMS | |
|---|---|---|---|---|
| COVERAGE | LIABILITY PAYMENTS | "AUTO" MEDICAL COVERAGE | LIABILITY PAYMENTS | "AUTO" MED |
| | | | | |
| | | | | |
| | TOTAL PREMIUMS: Minimum Premiums | | 0.00 | 0.00 |

When used as a premium basis:

## FOR PUBLIC AUTOS

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:

CL/CA 00 23 10 97M (Part 2)

A. Amounts yc ⎞⎠railroads, steamship lines, airlines ar⸱⸱⸱⸱ ⎞ motor carriers operating under ICC or PUC ⸱⸱⸱⸱.its.

B. Advertising Revenue

C. Taxes which you collect as a separate item and remit directly to a governmental division.

D. C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operating during the policy period.

## FOR RENTAL OR LEASING CONCERNS

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy pe and includes taxes except those taxes you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the "autos" you leased or rented to others during policy period.

## SCHEDULE OF COVERED AUTOS YOU OWN
## EXTENSION OF DECLARATIONS

POLICY NUMBER: D085P00168
ITEM THREE—SCHEDULE OF COVERED AUTOS YOU OWN (Cont'd)

| Covered Auto No. | DESCRIPTION — Year Model; Trade Name; Body Type / Serial Number (S); Vehicle Identification Number (VIN) | Original Cost New | Actual Cost & | NEW (N) USED (U) | TERRITORY: Town & State Where the Covered Auto will be principally garaged |
|---|---|---|---|---|---|
| 1 | 95 WHITE GMC TRACTOR  4V1SDBCH2SR514684 | 80,000 | | | 10 |
| 2 | 95 MACK TRACTOR  1M2AA14Y25W044634 | 80,000 | | | 10 |
| 3 | 99 MACK TRACTOR  1M2AA18Y0XW101706 | 95,000 | | | 10 |
| 4 | 99 MACK TRACTOR  1M2AA18Y4XW101708 | 95,000 | | | 10 |
| 5 | 99 MACK TRACTOR  1M2AA18Y6XW101709 | 95,000 | | | 10 |
| 6 | 99 MACK TRACTOR  1M2AA18Y4XW101711 | 95,000 | | | 10 |
| 7 | 99 MACK TRACTOR  1M2AA18Y4XW101714 | 95,000 | | | 10 |
| 8 | 99 W. STAR TRACTOR  2WKPDCCJ0XK956887 | 95,000 | | | 10 |

### CLASSIFICATION

| Covered Auto No. | Radius of Operation (In Miles) | Business use s=service p=retail c=comm'l | Size GVW, GCW or Vehicle Seating Capacity | Age Group | Primary Rating Factor Liab. | Phy. Damage | Seconda. Rating Factor | Code | Except for Towing all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of the loss |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 51-200 | | 45000+ | 6 | 3.00 | 1.20 | 0.90 | 50521 | First Century Cml Capital Cml |
| 2 | 51-200 | | 45000+ | 6 | 3.00 | 1.20 | 0.90 | 50521 | |
| 3 | 51-200 | | 45000+ | 4 | 3.00 | 1.20 | 0.90 | 50521 | Associates Commercial Corp, Branch #1802  P.O. 168647  Irving TX 75016 |
| 4 | 51-200 | | 45000+ | 4 | 3.00 | 1.20 | 0.90 | 50521 | Associates Commercial Corp, Branch 1802  P.O. 168647  Irving TX 75016 |
| 5 | 51-200 | | 45000+ | 4 | 3.00 | 1.20 | 0.90 | 50521 | Associates Commercial Corp, Branch #1802  P.O. 168647  Irving TX 75016 |
| 6 | 51-200 | | 45000+ | 4 | 3.00 | 1.20 | 0.90 | 50521 | Associates Commercial Corp, Branch #1802  P.O. 168647  Irving TX 75016 |
| 7 | 51-200 | | 45000+ | 4 | 3.00 | 1.20 | 0.90 | 50521 | Associates Commercial Corp, Branch #1802  P.O. 168647  Irving TX 75016 |
| 8 | 51-200 | | 45000+ | 4 | 3.00 | 1.20 | 0.90 | 50521 | |

COVERAGES—PREMIUMS, LIMITS AND DEDUCTIBLES  (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead)

| Covered Auto No. | LIABILITY Limit (In Thousands) | Premium | PERSONAL INJURY PROTECTION Limit (In Thousands) | Premium | AUTO MED. PAY Limit (In Thousands) | Premium | UNINSURED/UNDERINSURED MOTORISTS Limit (In Thousands) | Premium | COMPREHENSIVE Limit minus deductible shown below | Premium | SPECIFIED PERILS Limit | Premium | COLLISION Limit minus deductible shown below | Premium | TOWING & LABOR Limit per Disablement | Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1,000 | 2,745 | | | 5 | 83 | 100 | 47 | 2,500 | 378 | | | 2,500 | 1,961 | | |
| 2 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 378 | | | 2,500 | 1,961 | | |
| 3 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 704 | | | 2,500 | 3,444 | | |
| 4 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 704 | | | 2,500 | 3,444 | | |
| 5 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 704 | | | 2,500 | 3,444 | | |
| 6 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 704 | | | 2,500 | 3,444 | | |
| 7 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 704 | | | 2,500 | 3,444 | | |
| 8 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 704 | | | 2,500 | 3,444 | | |
| Total Premium | 21,960.00 | XXX | 0.00 | XXX | 664.00 | XXXXX | 382.00 | XXX | 4,980.00 | 0.00 | XXXX | 24,586.00 | XXX | | | |

ITEM TWO.

*Item Seven in Garage Coverage Form—Non-Dealers' and Trailers Dealers' Supplementary Schedule
Item Ten in Garage Coverage Form—Auto Dealers' Supplementary Schedule.

CA 191 (11-87)

**Limit state

# SCHEDULE OF COVERED AUTOS YOU OWN
## EXTENSION OF DECLARATIONS

POLICY NUMBER: D085P00168
ITEM THREE—SCHEDULE OF COVERED AUTOS YOU OWN (Cont'd)*

| Covered Auto No. | DESCRIPTION — Year Model; Trade Name; Body Type / Serial Number (S); Vehicle Identification Number (VIN) | PURCHASED Original Cost New | Actual Cost & | NEW (N) USED (U) | TERRITORY: Town & State Where the Covered Auto will be principally garaged |
|---|---|---|---|---|---|
| 9 | 98 KENWORTH TRACTOR 1XKWDB0X5WJ768037 | 90,000 | | | 10 |
| 10 | 00 KENWORTH TRACTOR 1XKWDB0X5YJ840082 | 100,000 | | | 10 |
| 11 | 99 BENSON TRAILER 1NUDT28N6XMAS1315 | 50,000 | | | 10 |
| 12 | 99 BENSON TRAILER 1NUDT28N8XMAS1316 | 50,000 | | | 10 |
| 13 | 00 BENSON TRAILER 1NUDT38R0YMAS1357 | 50,000 | | | 10 |
| 14 | 00 BENSON TRAILER 1NUDT38R0YMAS1356 | 50,000 | | | 10 |
| 15 | 00 BENSON TRAILER 1NUDT38R0YMAS1358 | 50,000 | | | 10 |
| 16 | 99 ALFAB TRAILER 1A9DA3630XS199456 | 50,000 | | | 10 |

## CLASSIFICATION

| Covered Auto No. | Radius of Operation (In Miles) | Business use s=service r=retail c=comm'l | Size GVW, GCW or Vehicle Seating Capacity | Age Group | Primary Rating Factor Liab. | Primary Rating Factor Phy. Damage | Secondary Rating Factor | Code | Except for Towing all physical damage loss is payable to you and the payee named below as interests may appear at the time of the loss |
|---|---|---|---|---|---|---|---|---|---|
| 9 | 51-200 | | 45000+ | 5 | 3.00 | 1.20 | 0.90 | 50521 | |
| 10 | 51-200 | | 45000+ | 3 | 3.00 | 1.20 | 0.90 | 50521 | Paccar Financial Corp 655 Business Ctr Drive, St Horsham PA 19044 |
| 11 | 51-200 | | | 4 | 0.20 | 0.80 | | 67521 | Paccar Financial Corp P.O. Box 102285 Atlanta 30368 |
| 12 | 51-200 | | | 4 | 0.20 | 0.80 | | 67521 | Paccar Financial Corp P.O. Box 102285 Atlanta 30368 |
| 13 | 51-200 | | | 3 | 0.20 | 0.80 | | 67521 | Paccar Financial Corp 655 Business Ctr. Drive, St Horsham PA 19044 |
| 14 | 51-200 | | | 3 | 0.20 | 0.80 | | 67521 | Paccar Financial Corp 655 Business Ctr. Drive, St Horsham PA 19044 |
| 15 | 51-200 | | | 3 | 0.20 | 0.80 | | 67521 | Paccar Financial Corp 655 Business Ctr. Drive, St Horsham PA 19044 |
| 16 | 51-200 | | | 4 | 0.20 | 0.80 | | 67521 | |

## COVERAGES—PREMIUMS, LIMITS AND DEDUCTIBLES

(Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corr... ITEM TWO column applies instead)

| Covered Auto No. | LIABILITY Limit (In Thousands) | LIABILITY Premium | PERSONAL INJURY PROTECTION Limit (In Thousands) | PERSONAL INJURY PROTECTION Premium | AUTO MED. PAY Limit (In Thousands) | AUTO MED. PAY Premium | UNINSURED UNDERINSURED MOTORISTS Limit (In Thousands) | UNINSURED UNDERINSURED MOTORISTS Premium | COMPREHENSIVE Limit* minus deductible shown below | COMPREHENSIVE Premium | SPECIFIED PERILS Limit** Premium | COLLISION Limit* minus deductible shown below | COLLISION Premium | TOWING & LA Limit per Disablement | P |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 470 | | 2,500 | 2,491 | | |
| 10 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 835 | | 2,500 | 4,300 | | |
| 11 | 1,000 | 121 | | | | | | | 2,500 | 156 | | 2,500 | 688 | | |
| 12 | 1,000 | 121 | | | | | | | 2,500 | 156 | | 2,500 | 688 | | |
| 13 | 1,000 | 121 | | | | | | | 2,500 | 185 | | 2,500 | 860 | | |
| 14 | 1,000 | 121 | | | | | | | 2,500 | 185 | | 2,500 | 860 | | |
| 15 | 1,000 | 121 | | | | | | | 2,500 | 185 | | 2,500 | 860 | | |
| 16 | 1,000 | 121 | | | | | | | 2,500 | 146 | | 2,500 | 649 | | |
| Total Premium | | 6,216.00 | XXX | 0.00 | XXX | 166.00 | XXXXX | 90.00 | XXX | 2,318.00 | 0.00 | XXXX | 11,396.00 | XXX | |

ITEM TWO.

*Item Seven in Garage Coverage Form—Non-Dealers' and Trailers Dealers' Supplementary Schedule
Item Ten in Garage Coverage Form—Auto Dealers' Supplementary Schedule.

# SCHEDULE OF COVERED AUTOS YOU OWN
## EXTENSION OF DECLARATIONS

POLICY NUMBER: D085P00168
ITEM THREE—SCHEDULE OF COVERED AUTOS YOU OWN (Cont'd)*

| Covered Auto No. | DESCRIPTION — Year Model; Trade Name; Body Type / Serial Number (S); Vehicle Identification Number (VIN) | Original Cost New | Actual Cost & | NEW (N) USED (U) | TERRITORY: Town & State Where the Auto will be principally ga... |
|---|---|---|---|---|---|
| 17 | 00 ALFAB TRAILER 1A9DA3638YS199532 | 50,000 | | | 10 |
| 18 | 00 ALFAB TRAILER 1A9DA3638YS199533 | 50,000 | | | 10 |
| 19 | 00 USTS TRAILER 1A9DS3637Y1051898 | 55,000 | | | 10 |
| 20 | 00 USTS TRAILER 1A9DS3637Y10S1899 | 55,000 | | | 10 |
| 21 | 87 INTL DUMP AHTLDTVR3HHA | 25,000 | | | 10 |
| 22 | 93 INTL TRUCK 1HTSCPEN2PH478271 | 35,000 | | | 10 |
| 23 | 78 FORD TRUCK F37SCCD1386 | | | | 10 |
| 24 | 96 FORD TRUCK AFTHF36F6TEB19838 | 20,000 | | | 10 |

### CLASSIFICATION

| Covered Auto No. | Radius of Operation (In Miles) | Business use a=service r=retail c=comm'l | Size GVW, GCW or Vehicle Seating Capacity | Age Group | Primary Rating Factor Liab. | Primary Rating Factor Phy. Damage | Secondary Rating Factor | Code | Except for Towing all physical damage loss is payable to you and t... payee named below as interests may appear at the time of the ... |
|---|---|---|---|---|---|---|---|---|---|
| 17 | 51-200 | | | 3 | 0.20 | 0.80 | | 67521 | Conseco Finance Box 1656 Minneapolis MN 554 |
| 18 | 51-200 | | | 3 | 0.20 | 0.80 | | 67521 | Conseco Finance Box 1656 Minneapolis MN 554 |
| 19 | 51-200 | | | 3 | 0.20 | 0.80 | | 67521 | |
| 20 | 51-200 | | | 3 | 0.20 | 0.80 | | 67521 | |
| 21 | 51-200 | C | 20-45000 | 6 | 1.90 | 0.90 | 0.90 | 33521 | |
| 22 | 51-200 | C | 20-45000 | 6 | 1.90 | 0.90 | 0.90 | 33521 | TelMark LLC |
| 23 | 51-200 | C | 0-10000 | 6 | 1.55 | 1.25 | 0.90 | 03521 | |
| 24 | 51-200 | C | 0-10000 | 6 | 1.55 | 1.25 | 0.90 | 03521 | |

COVERAGES—PREMIUMS, LIMITS AND DEDUCTIBLES  (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the co... ITEM TWO column applies instead)

| Covered Auto No. | LIABILITY Limit (In Thousands) | LIABILITY Premium | PERSONAL INJURY PROTECTION Limit (In Thousands) | PIP Premium | AUTO MED. PAY Limit (In Thousands) | AUTO MED PAY Premium | UNINSURED/UNDERINSURED MOTORISTS Limit (In Thousands) | UM Premium | COMPREHENSIVE Limit* minus deductible shown below | COMP Premium | SPECIFIED PERILS Limit* Premium | COLLISION Limit* minus deductible shown below | COLLISION Premium | TOWING Limit per Disablement |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17 | 1,000 | 121 | | | | | | | 2,500 | 185 | | 2,500 | 860 | |
| 18 | 1,000 | 121 | | | | | | | 2,500 | 185 | | 2,500 | 860 | |
| 19 | 1,000 | 121 | | | | | | | 2,500 | 185 | | 2,500 | 860 | |
| 20 | 1,000 | 121 | | | | | | | 2,500 | 185 | | 2,500 | 860 | |
| 21 | 1,000 | 1,764 | | | 5 | 83 | 100 | 45 | 2,500 | 141 | | 2,500 | 408 | |
| 22 | 1,000 | 1,764 | | | 5 | 83 | 100 | 45 | 2,500 | 180 | | 2,500 | 596 | |
| 23 | 1,000 | 1,550 | | | 5 | 83 | 100 | 45 | | | | | | |
| 24 | 1,000 | 1,550 | | | 5 | 83 | 100 | 45 | 250 | 226 | | 500 | 608 | |
| Total Premium | | 7,112.00 | XXX | 0.00 | XXX | 332.00 | XXXXX | 180.00 | XXX | 1,287.00 | 0.00 | XXXX | 5,082.00 | XXX |

ITEM TWO.

*Item Seven in Garage Coverage Form—Non-Dealers' and Trailers Dealers' Supplementary Schedule
 Item Ten in Garage Coverage Form—Auto Dealers' Supplementary Schedule.

CA 191 (11-87)

# SCHEDULE OF COVERED AUTOS YOU OWN
## EXTENSION OF DECLARATIONS

POLICY NUMBER: D085P00168
ITEM THREE—SCHEDULE OF COVERED AUTOS YOU OWN (Cont'd)*

| Covered Auto No. | DESCRIPTION Year Model; Trade Name; Body Type Serial Number (S); Vehicle Identification Number (VIN) | | PURCHASED Original Cost New | Actual Cost & | NEW (N) USED (U) | TERRITORY: Town & State Where the Co Auto will be principally gar |
|---|---|---|---|---|---|---|
| 25 | 00 FORD TRUCK  1FTSW31F4YEB11724 | | 32,000 | | | 10 |
| 26 | 00 FORD TRUCK  1FMNU43S2YEB00397 | | 35,000 | | | 10 |
| 27 | 74 HAUL TRAILER  3103177 | | | | | 10 |
| 28 | 01 ALFAB DUMP TRAILER  1A9DA36301S199580 | | 58,000 | | | 10 |
| 29 | 97 INTL TRUCK  2HTTGAET2VC018715 | | 80,000 | | | 10 |
| 30 | 97 INTL TRUCK  2HTTGAST6VC029866 | | 80,000 | | | 10 |
| 31 | 97 INTL TRUCK  2HTTGAST0VC029863 | | 115,000 | | | 10 |
| 32 | 98 INTL TRACTOR  1HTTGASTXMJ000115 | | 115,000 | | | 10 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### CLASSIFICATION

| Covered Auto No. | Radius of Operation (In Miles) | Business use a=service r=retail c=comm'l | Size GVW, GCW or Vehicle Seating Capacity | Age Group | Primary Rating Factor Liab. | Phy. Damage | Seconda Rating Factor | Code | Except for Towing all physical damage loss is payable to you and th payee named below as interests may appear at the time of the lo |
|---|---|---|---|---|---|---|---|---|---|
| 25 | 51-200 | C | 0-10000 | 3 | 1.55 | 1.25 | 0.90 | 03521 | |
| 26 | 51-200 | C | 0-10000 | 3 | 1.55 | 1.25 | 0.90 | 03521 | First Century |
| 27 | 51-200 | | | 6 | 0.20 | 0.80 | | 67521 | |
| 28 | 51-200 | | | 2 | 0.20 | 0.80 | | 67521 | Telemark LLC P.O. Box 4850 Syracuse NY 1322 |
| 29 | 51-200 | | 45000+ | 6 | 3.00 | 1.20 | 0.90 | 50521 | Telemark LLC P.O. Box 4943 Syracuse NY 13221- |
| 30 | 51-200 | | 45000+ | 6 | 3.00 | 1.20 | 0.90 | 50521 | Telemark LLC P.O. Box 4943 Syracuse NY 13221- |
| 31 | 51-200 | | 45000+ | 6 | 3.00 | 1.20 | 0.90 | 50521 | |
| 32 | 51-200 | | 45000+ | 5 | 3.00 | 1.20 | 0.90 | 50521 | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

COVERAGES—PREMIUMS, LIMITS AND DEDUCTIBLES    (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the col ITEM TWO column applies instead)

| Covered Auto No. | LIABILITY Limit (In Thou-sands) | Premium | PERSONAL INJURY PROTECTION Limit (In Thou-sands) | Pre-mium | AUTO MED. PAY Limit (In Thou-sands) | Pre-mium | UNINSURED/ UNDERINSURED MOTORISTS Limit (In Thou-sands) | Pre-mium | COMPREHENSIVE Limit* minus deductible shown below | Pre-mium | SPECIFIED PERILS Limit** Premium | COLLISION Limit** minus deductible shown below | Premium | TOWING & L Limit per Dis-ablement | P |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25 | 1,000 | 1,550 | | | 5 | 83 | 100 | 45 | 250 | 476 | | 500 | 1,671 | | |
| 26 | 1,000 | 1,550 | | | 5 | 83 | 100 | 45 | 250 | 476 | | 500 | 1,671 | | |
| 27 | 1,000 | 121 | | | | | | | | | | | | | |
| 28 | 1,000 | 121 | | | | | | | 2,500 | 185 | | 2,500 | 1,073 | | |
| 29 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 378 | | 2,500 | 1,961 | | |
| 30 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 378 | | 2,500 | 1,961 | | |
| 31 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 501 | | 2,500 | 2,373 | | |
| 32 | 1,000 | 2,745 | | | 5 | 83 | 100 | 45 | 2,500 | 623 | | 2,500 | 3,014 | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Total Premium | | 14,322.00 | XXX | 0.00 | XXX | 498.00 | XXXXX | 270.00 | XXX | 3,017.00 | 0.00 | XXXX | 13,724.00 | XXX | **Lim |

ITEM TWO.

*Item Seven in Garage Coverage Form—Non-Dealers' and Trailers Dealers' Supplementary Schedule
Item Ten in Garage Coverage Form—Auto Dealers' Supplementary Schedule.

CA 191 (11-87)

Pag

## MOBILE PROPERTY COVERAGE PART – DECLARATIONS

Policy No.   D085P00168         ☒   Broad Causes of Loss      **U S F+G**
     ☐   Specific Cause      INSURANCE

**LIMITS OF INSURANCE:** The most we will pay is:

   $30,000.00      For all Covered Property in any one "loss" at any one location.
   $30,000.00      For all Covered Property in any one "loss" at all locations.
   The Limit of Insurance shown in the Schedule of Covered Property for the described item of Covered Property.

**SCHEDULE OF COVERED PROPERTY:** ☐   See Schedule of Covered Property, CL/IL 523.

| Item No. | Description of Covered Property | Limit of Insurance |
|---|---|---|
| 1 | Miscellaneous Unscheduled Equipment | 30,000.00 |

**DEDUCTIBLE:**

   $1,000.00

**RATE AND MINIMUM PREMIUM:**

   $ 2.5      Rate

   $      Minimum Premium

**LOSS PAYEE NAME AND MAILING ADDRESS:** ☐   See CL/IL 513.

**SPECIAL PROVISIONS (if any):**

**FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

     See "Listing of Forms and Endorsements Forming a Part of This Policy."

**PREMIUM FOR THIS COVERAGE PART:**
   $750.00

 U S F + G
INSURANCE

## LISTING OF FORMS AND ENDORSEMENTS THAT FORM A PART OF THIS POLICY

### Policy Number D085P00168

**Named Insured**
Darren C. Lusk, dba: Big Chig, Inc.,
Big Chig Trucking, J & H Trucking, Inc.

P.O. Box 1869
Oceana, WV 24870

**Producer**
The Insurance Professionals, Inc.
8140 N. Hayden Road, Building H
Scottsdale, AZ 85258-2466

DATE ISSUED: 12/10/01
POLICY EFFECTIVE DATE:    11/30/01

POLICY EXPIRATION DATE:  11/30/02

INSURANCE COMPANY:   United States Fidelity and Guaranty Company

| FORM NUMBER | FORM TITLE |
|---|---|
| UC 1004 0197 | Commercial Insurance Policy Jacket |
| CL/IL 108 0694 | Commercial Insurance Policy- Common Policy Declarations |
| GU519 1198 | Common Policy Conditions M |
| GU507 0498 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) M |
| GU509 0498 | Calculation of Premium |
| CL/CA 00 23 1097M | Business Auto Coverage Part- Declarations |
| CL/CA 00 23 1097M2 | Business Auto Coverage Part- Declarations |
| CA191 1187 | Schedule of Covered Autos You Own |
| CA978 0299 | Changes In Commercial Auto Coverage Forms M |
| CA943 0797 | Auto Medical Payments Coverage |
| CA196 0797 | Business Auto Coverage Form |
| CA2122 0401 | Uninsured and Underinsured Motorists Coverage |
| CL/IL 582 0589 | Mobile Property Coverage Part - Declarations |
| CA0183 1100 | West Virginia Changes |
| CA405e 0394 | West Virginia Changes-Canc. |
| CA980 0299 | Additional Insured- Lessor |
| CA801 1293 | Loss Payable Clause |
| PA0235 1200 | West Virginia Changes |
| CI166 0695 | Commercial Inland Marine Conditions |
| MC1622k 1099 | MCS-90 |
| CL/CM 0010-B 1087 | Mobile Property Coverage Form |
| CL/IL580 0586 | Quick Reference - Mobile Property Coverage Part |
| IL0935 0701 | Excl of Certain Comp Related Losses |
| FORMSLIST | Listing of Forms and Endorsements that Form a Part of This Policy |

05/28/2003 09:45 3042556106 BLUESTONE PAGE 04/28

IN THE CIRCUIT COURT OF WYOMING COUNTY, WEST VIRGINIA

CHARLIE SANDERS, Individually, and
LORETTA BAILEY, as the Personal Representative
of the ESTATE OF SHAWN KEITH BAILEY,
    Plaintiffs,

v.                                    Civil Action No: 03-C-100

BLUESTONE COAL CORPORATION, a
West Virginia Corporation; BIG CHIG, INC.,
d/b/a/ BIG CHIG TRUCKING COMPANY, a
West Virginia Corporation; LOGAN & KANAWHA
COAL CO., INC., a West Virginia Corporation; and
RONNIE JOE LUSK,
    Defendants.





## COMPLAINT

(1) The defendants, jointly and severally, drove and caused to be driven upon the highways of the State of West Virginia, a coal truck that was more than two times over the maximum weight limits permissible under West Virginia law [*W.Va. Code § 17C-17-9*] on April 15, 2002. This truck overturned in a curve as a result of being overweight, crushing to death Shawn Keith Bailey and rendering Charlie Sanders a paraplegic.

(2) Bluestone Coal Corporation (Bluestone) is a West Virginia company whose principal place of business is P. O. Box 1085, Beckley, Raleigh County, West Virginia 25802. Bluestone Coal Company owns and operates under various Permits in the Pinnacle Creek section of Wyoming County, West Virginia. On April 15, 2002, employees under the direction and control of Bluestone Coal Corporation purposefully and intentionally overloaded a coal truck belonging to KAT Trucking Company. This truck was overloaded by more than two times the permissible weight limits contained in *W.Va. Code § 17C-17-9* and eventually

overturned in a curve, crushing to death Shawn Keith Bailey and rendering paraplegic his passenger, Charlie Sanders.

(3) Big Chig, Inc., d/b/a Big Chig Trucking Company (Big Chig), is a West Virginia corporation with a principal place of business of P. O. Box 1869, Oceana, Wyoming County, West Virginia 24870.   Big Chig Trucking Company held a coal haulage contract with Bluestone Coal Corporation from its Pinnacle Creek Operations.  Big Chig, in turn, entered into a coal haulage contract with KAT Trucking Company and was at all times relevant to this proceeding a joint venturer with respect to KAT Trucking Company and its employee, Ronnie Joe Lusk.

(4) Ronnie Joe Lusk lives and resides at Box 1236, Oceana, Wyoming County, West Virginia 24870.  Ronnie Lusk was driving a coal truck that had been loaded by employees of Bluestone Coal Corporation to a level that exceeded the permissible haulage limits in the State of West Virginia by two times.  Ronnie Lusk lost control of the coal truck in a curve, tipping the overweight trailer onto a truck being driven by Shawn Keith Bailey and being occupied by Charlie Sanders.

(5) Logan & Kanawha Coal Co., Inc. (Logan & Kanawha), a West Virginia corporation, entered into contracts with Bluestone and was engaged in a joint enterprise wherein the companies combined their resources, equipment, property, personnel and knowledge for the purposes of pursuing a common objective, namely, the production, transportation and sale of coal from the Pinnacle Creek operations where the KAT Trucking Company vehicle was overloaded in furtherance of these common business interests.

Case 5:03-cv-00702 Document 1 Filed 07/29/03 Page 29 of 37 PageID #: 29

## FACTS COMMON TO ALL COUNTS

(6) Bluestone owns and operates several mines in the Pinnacle Creek section of Wyoming County, West Virginia under Permits issued by the State of West Virginia. Coal mined at these operations would be stockpiled at a central location on the premises of Bluestone Coal Corporation for transport to Kanawha River Terminals, Inc. and other destinations. Logan & Kanawha was engaged in a joint enterprise with Bluestone in these activities on April 15, 2002.

(7) Bluestone provided an endloader and an employee-operator to load all coal trucks for the purpose of transporting coal from the stockpiled site to the delivery point. The employees of Bluestone controlled the quantity of mineral loaded upon all coal trucks and physically completed all tasks associated with the loading of the coal trucks.

(8) Bluestone, in furtherance of its business interests, entered into coal haulage contracts with various trucking companies, including Big Chig, Inc., d/b/a Big Chig Trucking Company and KAT Trucking.

(9) The terms and conditions of the coal haulage arrangements required the trucking companies to present themselves at the stockpiled site, at which time their trucks would be loaded with coal by employees of Bluestone using an endloader supplied by Bluestone. The trucking companies then would haul to various destinations, including Kanawha River Terminals where the loads would be weighed. The employees of the trucking companies would then return the weigh bills to Bluestone which, in turn, would issue payment, either directly or through Logan & Kanawha.

-3-

(10) The terms and conditions of payment under the coal haulage contracts generally paid truckers a per ton rate for coal transported to Kanawha River Terminals, such weight being verified at the delivery point.

(11) Bluestone controlled all activities related to the truck hauling companies that entered upon its premises and directed all activities connected with loading all coal trucks.

(12) Big Chig Trucking Company held one of the coal haulage contracts with Bluestone Coal Corporation.

(13) With the permission, consent and approval of Bluestone, Big Chig contracted with KAT Trucking to haul coal from the stockpile at its Pinnacle Creek operations to various destinations, including the Kanawha River Terminals' location.

(14) Ronnie Lusk entered the premises of Bluestone's Pinnacle Creek operations on April 15, 2002 with the permission, consent and approval of both Big Chig Trucking Company and Bluestone. At all times that he was on the premises of Bluestone, he was subject to its direct control and supervision.

(15) Ronnie Lusk's truck was loaded at the Pinnacle Creek operations of Bluestone Coal Corporation with in excess of 55,000 tons of coal—an amount that exceeded the statutory permissible limits for transport upon the roadways and highways of the State of West Virginia by more than two times [*W.Va. Code § 17C-17-9*].

(16) Ronnie Lusk's coal truck was loaded by an employee of Bluestone using equipment owned, controlled and directed by Bluestone.

(17) Bluestone, by and through its owners, managers, supervisors and employees, implemented a policy and practice of over-loading coal haulage trucks at its Pinnacle Creek

-4-

operations, knowing that such coal trucks would be operated on the highways and roadways of the State of West Virginia in violation of *W.Va. Code § 17C-17-9*.

(18) Ronnie Lusk left the operations at Pinnacle Creek on April 15, 2002 and began his trip toward the Kanawha River Terminal location for the purposes of delivering the coal in accordance with the directions of Bluestone, Big Chig and Logan & Kanawha.

(19) While driving upon State Route 10 near Mallory, Logan County, West Virginia, Ronnie Lusk entered a curve. The weight of the load shifted, causing the trailer to overturn.

(20) Opposite-bound on State Route 10 at the same time was a 1995 Ford F-150 truck being driven by Shawn Keith Bailey and being occupied by his passenger, Charlie Sanders.

(21) Shawn Keith Bailey and Charlie Sanders were employees of Powell Construction Company and were traveling to their homes in Sabine, Wyoming County, West Virginia.

(22) The overweight coal truck met Shawn Bailey's truck in a curve, with the trailer of the coal truck overturning and crushing the 1995 Ford F-150 truck containing Shawn Keith Bailey and Charlie Sanders.

(23) Shawn Keith Bailey sustained numerous internal injuries in the wreck and survived for approximately 4½ hours. Shawn Keith Bailey died on the operating table leaving his wife, Janell Bailey; his daughter, Taleah Bailey; his father and mother, Hollie and Loretta Bailey, respectively; and his brother and sister, Hollie Bailey, Jr. and Angela (Bailey) Francis as his survivors.

(24) Charlie Sanders, who was a passenger in Shawn Bailey's vehicle, also received crush injuries in the wreck. He suffered a blow out fracture in his thoracic spine that resulted in complete paraplegia from the T11 level in his thoracic spine down. Charlie Sanders'

paraplegia has been graded at an Asia A, which is the most severe form of impairment. Charlie Sanders has no function in his lower extremities and requires substantial assistance twenty-four hours a day with basic bodily functions.

## CLAIMS AGAINST BLUESTONE COAL CORPORATION

(25) The plaintiffs charge that Bluestone, by and through its employees, was negligent when it loaded upon the truck being driven by Ronnie Joe Lusk a quantity of coal that exceeded the permissible weight limits allowable under West Virginia law.

(26) The plaintiffs further charge that Bluestone, by and through its owners, managers and employees, committed overt acts willfully, wantonly and recklessly in furtherance of a civil conspiracy to violate the traffic safety laws of the State of West Virginia, especially those traffic safety laws relating to permissible weight limits for coal haulage trucks contained at *W.Va. Code § 17C-17-9.*

(27) The plaintiffs charge that Bluestone Coal Corporation undertook the following overt acts in furtherance of this conspiracy:

a. Bluestone, by and through its employees, loaded coal trucks at its Pinnacle Creek operations with an amount and quantity of coal it knew violated the permissible weight limits for coal haulage vehicles operating on the roadways and highways of the State of West Virginia;

b. Bluestone officials directed and controlled the activities of loading these trucks and particularly the truck being operated by Ronnie Joe Lusk on the day and time of this collision;

c. Bluestone directed such trucks to operate on the roadways and highways of the State

-6-

of West Virginia in violation of the permissible weight limits for the purposes of serving its business interests and for the purposes of delivering quantities of its coal to the Kanawha River Terminals; and

    d.  The purpose and object of this civil conspiracy was to breach and violate the weight limits imposed by West Virginia law upon vehicles operating on its roadways and highways for the purposes of increasing the profits gained by Bluestone, its affiliates, representatives, subordinates, subsidiaries, agents and partners.

    (28) The plaintiffs further charge that Bluestone, by and through its agreements with Logan & Kanawha, Big Chig and its representatives, including KAT Trucking Company, was engaged in a joint venture and had combined its resources, equipment, property, personnel and knowledge for the purpose of running coal operations at Pinnacle Creek in Wyoming County, West Virginia and, as a result of such joint venture, has imputed liability for the negligence, recklessness and willfulness of those joint venturers.

### CLAIMS AGAINST BIG CHIG, INC.,
### d/b/a BIG CHIG TRUCKING COMPANY

    (29) Big Chig, Inc., d/b/a Big Chig Trucking Company, entered into contracts with Bluestone and KAT Trucking Company and were engaged in a joint enterprise or, alternatively, a joint venture, wherein they combined their resources, equipment, property, personnel and knowledge for the purposes of pursuing a common objective, namely, the production, transportation and sale of coal, and Big Chig, therefore, is a joint venture.

    (30) The plaintiffs charge that Big Chig, as a joint venturer, is liable for the negligent, reckless and willful actions of all those engaged in the same enterprise, including Bluestone in

operating, maintaining, directing and controlling the loading of trucks with coal in excess of the weight limits of the State of West Virginia.

## CLAIMS AGAINST RONNIE JOE LUSK

(31) Ronnie Joe Lusk owed a duty to the driving public generally and to Shawn Bailey and Charlie Sanders specifically, to operate his vehicle with due regard for the safety and welfare of all those using the same roadways and highways. His specific duties included obeying the traffic regulations of the State of West Virginia, including *W.Va. Code § 17C-11-19* which prohibited him from operating a truck upon the roadways and highways of the State of West Virginia with a gross weight in excess of the permissible limits and further was required to obey the provisions of *W.Va. Code § 17C-6-1* which required him to operate his vehicle with due regard for the safety and welfare of all those he may encounter and to adjust his speed and maintain control of his vehicle given the road conditions and conditions of his vehicle, then existing.

(32) The plaintiffs charge that Ronnie Joe Lusk breached and violated both his common law duties of due care and his statutory duties as aforesaid when, on April 15, 2002, he was driving a coal truck upon the roadways and highways of the State of West Virginia that was overweight by more than two times the permissible limit and, in that dangerous condition, entered a curve, lost control of his vehicle, flipped the trailer, crushing the opposite-bound vehicle being driven by Shawn Bailey and being occupied by Charlie Sanders.

## CLAIMS AGAINST LOGAN & KANAWHA COAL CO., INC.

(33) Logan & Kanawha "was engaged in a joint venture and/or joint enterprise" with

-8-

the other named defendants on April 15, 2002. Logan & Kanawha had combined its resources, equipment, knowledge, capital and personnel with those of Bluestone for the purpose of mining and transporting coal from Pinnacle Creek to Logan & Kanawha terminals.

(34) Running overweight coal trucks from Pinnacle Creek to Kanawha River terminals, loaded with coal owned, in whole or in part, by Logan & Kanawha, served its joint business interests with Bluestone.

(35) The plaintiffs invoke the Doctrine of Imputed Liability to Logan & Kanawha for the acts of negligence, recklessness and willfulness committed by its joint ventures in causing the wreck of April 15, 2002, which forms the subject matter of this lawsuit.

(36) As a direct and proximate result of the defendants' joint and several negligence, Shawn Keith Bailey suffered great mental anguish, pain, suffering and emotional distress during the 4½ hours he survived following the motor vehicle collision in which he received crushing injuries to his internal organs.

(37) As a direct and proximate result of the defendants' joint and several recklessness, negligence and carelessness and breach and violation of their statutory duties, Shawn Keith Bailey eventually succumbed to his injuries and his Estate and loved ones have forever lost his kindly offices, companionship, love and affection and have and will continue to experience for the remainder of their lives sorrow, solace and mental anguish. Shawn Keith Bailey's Estate has further suffered and sustained economic damages associated with his death, including lost earnings capacity over his lifetime of $759,000.00; medical expenses for treatment and care during the 4½ hours he survived of $17,000.00; and funeral expenses and internment expenses of $6,184.00.

(38) As a direct and proximate result of the defendants' joint and several negligence, recklessness and carelessness, Charlie Sanders suffered and sustained crush injuries, among other things, to his thoracic spine, causing him to be rendered a T11, Asia A paraplegic. Charlie Sanders has and will continue to experience great pain, suffering, mental anguish and emotional distress; has and will continue to experience a diminution in his ability to carry forward routine and regular activities of daily living; has and will continue to undergo painful and invasive surgical procedures; has and will continue to incur substantial expenses for his daily maintenance, including bowel and bladder programs; has and will continue to experience and suffer the loss of physical function from the T11 level in his thoracic spine downward; has and will continue to experience paralysis in his lower extremities and loss of physical function; has and will continue to experience a loss in earnings capacity, such loss exceeding $500,000.00 reduced to present value; has and will continue to incur medical expenses for treatment and care, such medical expenses already exceeding $123,000.00; and has and will continue to incur substantial expenses for life care maintenance, such expenses, projected over his lifetime, and reduced to present value, amounting to $2,000,000.00.

**WHEREFORE,** the Estate of Shawn Keith Bailey, by and through its Personal Representative, Loretta Bailey, his mother, and Charlie Sanders, individually, demand a judgment in compensatory and exemplary damages against these defendants, jointly and severally, in an amount that fully and fairly compensates the plaintiffs for all aspects of their injuries, past, present and future; plus an award of pre-judgment and post-judgment interest; and such other relief to which they may be entitled.

-10-

05/28/2003  09:46    3042556106                    BLUESTONE                         PAGE  14/29

A JURY TRIAL IS DEMANDED.

**CHARLIE SANDERS, Individually,
and LORETTA BAILEY, as the
Personal Representative of the Estate
of SHAWN KEITH BAILEY**

BY:  SANDERS, AUSTIN, PRUDICH
        & FLANIGAN

WILLIAM FLANIGAN, ESQ.
WV STATE BAR ID NO: 1217
LANE O. AUSTIN, ESQ.
WV STATE BAR ID NO: 0189
320 Courthouse Road
Princeton, WV  24740
COUNSEL FOR PLAINTIFFS

-11-