```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BECKLEY
```

**UNITED STATES FIDELITY &**
**GUARANTY COMPANY,**

    **Plaintiff,**

**v.**                         **CIVIL ACTION NO. 5:03-0702**

**CHARLIE SANDERS,**
**LORETTA BAILEY, Administratrix**
**of the Estate of Shawn Keith Bailey,**
**DARREN C. LUSK d/b/a Big Chig, Inc.,**
**RONNIE JOE LUSK,**
**KAT TRUCKING COMPANY,**
**LOGAN & KANAWHA COAL CO., INC.,**
**BLUESTONE COAL CORPORATION,**

    **Defendants.**

## MEMORANDUM OPINION

Pending before the court are plaintiff United States Fidelity & Guaranty Company's ("USF&G") motions for summary judgment (Doc. Nos. 67 & 91) and defendant Bluestone Coal Corporation's ("Bluestone") motion for summary judgment (Doc. No. 89).

Having reviewed the record and applicable law and for the reasons outlined below, by separate Judgment Order filed herewith, the court (1) grants USF&G's motions for summary judgment (Doc. Nos. 67 & 91) and (2) denies Bluestone's motion for summary judgment (Doc. No. 89). Accordingly, the Clerk is directed to strike this case from the active docket of the court.

## I. Factual Allegations

This case arises out of a fatal crash between a coal hauling truck and a pickup truck. (Doc. No. 92 at 2.) Allegedly, on April 15, 2002, Ronnie Lusk, an employee of KAT Trucking ("KAT"), lost control of a coal truck which tipped over and fell on a pickup truck occupied by Shawn Bailey and Charlie Sanders. (Id.) As a result, Bailey was killed, and Sanders was paralyzed. (Id.)

After the accident, Charlie Sanders and Loretta Bailey, as personal representative of Shawn Bailey's estate, filed a complaint ("Sanders Complaint") for negligence against Bluestone, Big Chig, Inc. ("Big Chig"), Logan & Kanawha Coal Co., Inc., and Ronnie Joe Lusk in the Circuit Court of Wyoming County. (Doc. No. 1 Ex. B.) The Saunders Complaint alleges that Bluestone entered a coal hauling contract with Big Chig, which in turn, contracted some hauling to KAT. (Id. ¶¶ 8 & 13.) Essentially, the Sanders Complaint alleges that Bluestone, Big Chig, and KAT are jointly liable for negligence in the crash because they acted as joint venturers. (Id. ¶¶ 25, 29, 32, 38.) Sanders and Bailey allege that all three are liable because KAT's truck was negligently overloaded by Bluestone employees and negligently driven by KAT's driver, Ronnie Lusk. (Id. ¶¶ 11 & 15.)

Big Chig held a business auto insurance policy ("Policy") with USF&G in effect on the accident date. (Doc. No. 25 ¶ 12.) Now, USF&G brings this action for a declaration establishing

2

(1) that it has no duty to indemnify nor defend Big Chig in actions arising from the accident, (2) that KAT's insurer owes a duty to defend or indemnify Big Chig, and (3) that any coverage USF&G may owe Big Chig is limited to coverage in excess of that owed by KAT's insurer.[1] (Id. ¶¶ 35-37.) USF&G also seeks attorney fees and costs pursuant to W. Va. Code § 55-13-10.

In its summary judgment motion, USF&G argues that the Policy only covers loss for which an insured is liable. (Doc. No. 92 at 15-16.) USF&G maintains that Big Chig cannot be liable for the KAT truck's accident because KAT and Bluestone were independent contractors, not joint venturers. (Id. at 16.) USF&G argues that it need not provide coverage to Big Chig for KAT truck's accident because Big Chig cannot be liable for the allegations of the Sanders Complaint. (Id. at 10-11.) Second, USF&G argues that coverage does not extend to the injuries sustained in this collision because KAT's truck does not fall within the policy's coverage, specifically coverage provided for "nonowned autos." (Id. at 11-15.)

Bluestone asserts that KAT's truck is covered as a "nonowned auto" under the Policy. (Doc. No. 89 at 2.) Bluestone argues that USF&G owes a duty to defend both Big Chig and itself as an additional insured. (Doc. No. 90-1 at 8-9.) Big Chig and KAT

---

[1] KAT's insurer has since settled with Sanders and Bailey in the underlying litigation. (Doc. No. 92 at 4.)

failed to answer USF&G's complaint in this action, and default was entered against both. (Doc. Nos. 16 & 66.)

## II. Standard of Review

A motion for summary judgment may be granted when there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his case and does not make, after adequate time for discovery, a showing sufficient to establish that element. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of their position. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 250-251. Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

### III. Analysis

### A. USF&G's Duty to Defend and Duty to Indemnify

USF&G does not owe Big Chig a duty to defend or indemnify against the Sanders Complaint because KAT's truck was not a covered auto under the Policy. To determine whether USF&G has a duty to defend Big Chig against the Sanders Complaint, the court must determine whether the allegations in the complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the Policy. W. Va. Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 47, 602 S.E.2d 483, 490 (2004) (citing Bruceton Bank v. U.S. Fid. & Guar. Ins. Co., 199 W. Va. 548, 549, 486 S.E.2d 19, 20 (1997)). To do so, the court must examine the allegations of the Sanders Complaint but need not adjudicate the underlying facts. Id.

The party seeking coverage bears the burden to prove both the existence of an applicable insurance contract and its material terms. Payne v. Weston, 195 W. Va. 502, 506, 466 S.E.2d 161, 165 (1995). Then, the burden shifts to the insurer to prove the facts necessary to trigger a policy exclusion. Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 177 W. Va. 734, 741, 356 S.E.2d 488, 495 (1987). In the absence of ambiguity or other compelling reason, the court must "apply and not interpret" the "plain and ordinary meaning" of an insurance contract. Id.

Under the Policy, coverage extends only to certain autos. Those include "nonowned autos," which the Policy describes as "[o]nly those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business."[2] (Doc. No. 1 Ex. A at 1.) In this case, the existence of coverage under the Policy turns on the meaning of the phrase, "in connection with" the insured's business.

West Virginia courts have never addressed the meaning of "in connection with" a business in a nonowned auto or similar provision of an insurance contract. However, several other courts confronting the issue have looked to the two factors discussed below.

The first factor is the extent to which the vehicle at issue was used in the course and scope of the insured's business. <u>Gore v. State Farm Mut. Ins. Co.</u>, 649 So. 2d 162, 166 (La. Ct. App. 1995) ("policy language requires that the accident occur while the 'nonowned auto' is being used in the course and scope of the

---

[2] The full "nonowned auto" provision states:

> Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

(Doc. No. 1 Ex. A at 1.)

insured's business or personal affairs"); <u>Adams v. Thomason</u>, 753 So. 2d 416, 421 (La. Ct. App. 2000).

In <u>Adams</u>, a farmer's employee was driving the farmer's truck and pulling a load of the farmer's cotton in a trailer owned by the named insured. <u>Adams</u>, 735 So. 2d at 418, 420. The insured was a cotton gin business. <u>Id.</u> The court concluded that the farmer's employee was acting in the course and scope of the farmer's business and not of the insured cotton gin. <u>Id.</u> at 421. Notably, the fact that the driver was employed by an entity other than the insured led the court to conclude that the vehicle's use was not "in connection with" the insured's business. <u>Id.</u>

In this case, KAT's truck was used the course and scope of its own business, not Big Chig's business. The <u>Adams</u> court gave great weight to the fact that at the time of the accident the driver was working in the employ of someone other than an insured. <u>Adams</u>, 735 So. 2d at 421. Similarly, in this case, the driver of the coal hauling truck was working for KAT, not Big Chig. This fact indicates that the KAT truck involved in the collision at issue was being used in the course and scope of KAT's business, not Big Chig's.

The second factor in determining whether use was "in connection with" the insured's business is the extent to which an insured held or exerted a right of control over the vehicle and its driver. <u>Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.</u>, 1997

7

WL 786760, *7 (N.D. Miss. Nov. 13, 1997); Adams, 753 So. 2d at 421. In Liberty Mutual, a lumber company held an insurance policy with language nearly identical to Big Chig's Policy. Liberty Mutual, 1997 WL 786760, *7. The lumber company made an oral contract for the hauling of wood with a trucking company. Id. The lumber company paid the trucking company a fee per ton of hauling and did not exert any control over the truck's operation other than to indicate where the lumber should be picked up and dropped off. Id. at *1-2. The trucking company's employee was involved in an accident which resulted in the death of the driver of another vehicle. Id. at *2. A federal district court held that the truck involved was not used "in connection with" the lumber company's business. Id. at *7. That court looked primarily to the lumber company's lack of control over any aspect of the truck's operation other than pickup and drop off point. Id. (stating that "'using' . . . while not necessarily limited to actual physical operation of the vehicle (i.e., driving), is appropriately read as requiring more than just the ability to direct and control the vehicle.").

Big Chig did not exercise control over KAT's driver. KAT's truck driver and loader decided what quantity of coal would be loaded onto the truck. (Id. at 13, 15.) Big Chig merely billed for KAT's work and reimbursed KAT while keeping an administrative fee. (Doc. No. 90-3, Lusk Dep. at 10-11, 39-40, 53-54.)

However, as in Liberty Mutual, Big Chig's billing method is irrelevant to the issue of control because it does not show any right or effort on Big Chig's part to direct KAT's operations. See Liberty Mutual, 1997 WL 786760 at *7.

Sanders and Bailey baldly assert that Big Chig collected and reviewed KAT's safety and insurance paperwork on Bluestone's behalf and thereby asserted control by restricting access to the Bluestone site. (Doc. No. 94 at 4-5.) Taken in the light most favorable to the defendants, the record does not support this assertion. Significantly, the Bragg deposition upon which Sanders and Bailey rely does not appear in the record, and thus, cannot be used as support for Sanders and Bailey's position. The other depositions available to the court indicate that at most Big Chig collected evidence of KAT's insurance for its own purposes and told KAT's driver where to pick up coal. (Doc. No. 90-4 Price Dep. at 9-12; Doc. No. 90-3 Lusk Dep. at 12-13).

Moreover, deposition testimony available to the court never indicates that Big Chig provided Bluestone with copies of the documentation it collected. The record is devoid of evidence that Bluestone even required such documentation of KAT's driver. Darren Lusk of Big Chig stated that Bluestone's site did not use a guard or gate to limit access to the job site involved. (Doc. No. 90-3, Lusk Dep. at 14.) This testimony undercuts Sanders and Bailey's suggestion that Bluestone restricted access to its site,

9

an assertion supported only by deposition testimony absent from the record. (Doc. No. 94 at 4.) In addition, Tony Toler, who accompanied Ronnie Lusk in a separate truck on the day of the accident, did not recall going through any check-in process when he arrived at the Bluestone pick-up site on the day of the accident. (Doc. No. 90-4, Toler Dep. at 23.) Based on the evidence before it, the court concludes that there is no genuine issue of material fact that Big Chig did not control KAT's truck or driver.

Defendants' legal argument also fails. Bluestone cited cases in which coverage was found under similar policy language and in similar circumstances. However, the court believes that the authority presented by Bluestone is unpersuasive in this case. See Indiana Ins. Co. v. Am. Cmty. Serv., Inc., 768 N.E.2d 929 (Ind. Ct. App. 2002); Succession of Fannaly v. Lafayette Ins. Co., 805 So. 2d 1134 (La. 2002).

The facts of Succession of Fannaly are distinguishable from the case before the court because the policy language at issue in that case differed materially from Big Chig's Policy. The insurance policy in Succession of Fannaly extended coverage to "nonowned autos" used "by any person other than [the named insured] in the course of [the named insured's] business." Succession of Fannaly, 805 So. 2d at 1138. This makes the policy language in that case considerably broader than Big Chig's

Policy. (See Doc. No. 1 Ex. A at 1.) Big Chig's Policy is not explicitly limited to employees, but it is not so broad as to cover "any person" using an auto "in connection with" Big Chig's business. (See supra footnote 3.)

Next, Bluestone looks to Indiana Insurance Company v. American Community Services, Inc., 768 N.E.2d 929 (2002). That case is weak support for Bluestone's position. The question of whether the use at issue was "in connection with" the insured's business was not presented on appeal. See id. The trial court's holding in that case provides little value in this case because the trial court's reasoning is unavailable for analysis.

The court finds that because KAT's driver did not act within the course and scope of Big Chig's business and because Big Chig did not exercise control over KAT, KAT's truck was not used "in connection with" Big Chig's business. As such, KAT's truck was not covered under the Policy as a "nonowned auto" or otherwise. This court finds that the risks from KAT's operation of its own truck are "entirely foreign to the risks covered by the insurance policy." State Auto. Mut. Ins. Co. v. Alpha Eng'g Serv., Inc., 208 W. Va. 713, 716, 542 S.E.2d 876, 879 (W. Va. 2000). Therefore, USF&G has no duty to defend Big Chig against the Sanders Complaint. Accordingly, summary judgment for USF&G is appropriate.

11

### B. Coverage by KAT's Insurer

Because this court finds that KAT's truck is not covered under the Policy, the court need not reach the question of any duty to defend or indemnify owed by KAT's insurer or whether USF&G's coverage under the Policy would be excess over coverage provided by KAT's insurer.

### C. Attorney Fees and Costs

Because this court finds no coverage for Big Chig regarding the KAT truck, the court must address USF&G's request for attorney fees and costs pursuant to W. Va. § 55-13-10. In its discretion, the court declines to order such an award to USF&G.

## IV. Conclusion

Because the court finds that USF&G has no duty to defend or indemnify, it is proper to grant USF&G's motion for summary judgment. The Clerk is directed to strike this case from the active docket of the court and to send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED this 23rd day of March, 2006.

ENTER:

*David A. Faber*
David A. Faber
Chief Judge